Steven A. Alpert, NV #8353
PRICE LAW GROUP, APC
5940 S Rainbow Blvd,
Las Vegas, NV 89118
T: (702) 794-2008
F: (866) 401-1457
alpert@pricelawgroup.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Anthony Willis,<br><br>      Plaintiff,<br><br>v.<br><br>Greater Nevada Credit Union; Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC,<br><br>      Defendants. | **Case No.:** 2:21-cv-338<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br> 1. **FCRA, 15 USC §1681** *et seq.* |

NOW COMES Plaintiff Anthony Willis, ("Plaintiff"), by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendants Greater Nevada Credit Union ("GNCU"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union"):

## INTRODUCTION

1. Plaintiff's Complaint alleges violations of the FCRA, 15 U.S.C. § 1681 *et seq.*, against Defendants Experian, Equifax, and Trans Union, each a consumer reporting agency, for reporting inaccurate information on Plaintiff's credit report.

1

1    2.    Plaintiff's    Complaint also    alleges violations    of    the FCRA,
2  against Defendant GNCU or failing to conduct a reasonable reinvestigation after receiving notice
3  of Plaintiff's dispute from Defendants Experian, Equifax, and Trans Union.
4
                            **JURISDICTION AND VENUE**
5
6    3.    The District Court has federal question jurisdiction over these claims pursuant to
7  28 U.S.C. § 1331; 15 U.S.C. § 1681.
8    4.    Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a
9  substantial part of the events or omissions giving rise to the claim occurred in this district.
10    5.    Defendants transact business here; as such, personal jurisdiction is established.
11
                                    **PARTIES**
12
13    6.    Plaintiff incorporates herein by reference all of the above paragraphs of this
14  Complaint as though fully set forth at length herein.
15    7.    Plaintiff is a natural person who resides in the city of Ely in White Pine County
16  Nevada.
17    8.    Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).
18    9.    Defendant GNCU is a financial institution engaged in the business of giving
19
20  credit and collecting debt. GNCU is also a *furnisher*, as defined in 15 U.S.C. § 1681s-2. Upon
21  information and belief, GNCU is regularly engaged in the business of furnishing credit
22  information to the credit reporting agencies. GNCU is headquartered at 451 Eagle Station Lane,
23  Carson City, NV 89701-6494, and can be served at its registered agent, FENNEMORE CRAIG,
24  P.C., 7800 Rancharrah Parkway, Reno, NV 89511.
25    10.    Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. §
26  1681a(f)).   Upon information and belief, Experian is regularly engaged in the business of
27
28
                                            COMPLAINT AND DEMAND
                                            FOR JURY TRIAL

assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 USC 1681a(d), to third parties. Experian's principal place of business, which Experian can also be served at, is 475 Anton Boulevard, Costa Mesa, CA 92626.

11.     Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA, 30309, and Equifax can be served at its registered agent, CORPORATION SERVICE COMPANY, 40 Technology Pkwy South, Norcross, GA 30092.

12.     Defendant Trans Union is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 USC 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, IL 60661. Trans Union can be served at its registered agent, PRENTICE HALL CORPORATION, 801 Adlai Stevenson Drive, Springfield, IL 62703.

13.     During all time pertinent to this Complaint, Defendants were authorized to conduct business in the State of Nevada and conducted business in Nevada on a routine and systematic basis.

COMPLAINT AND DEMAND
FOR JURY TRIAL

14.     Upon information and belief, Defendants Experian, Equifax, and Trans Union, (referenced together as "credit reporting agencies" or "CRAs") disburse *consumer reports* to third parties under contract for monetary compensation.

15.     At all relevant times, Defendants GNCU, Experian, Equifax, and Trans Union acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

16.     Any violation by Defendants was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

17.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

18.     Defendants Experian, Equifax, and Trans Union report consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

19.     Defendants Experian, Equifax, and Trans Union credit reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit

cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

20.     Defendants Experian, Equifax, and Trans Union gain access to consumer information from various sources, including furnishers who provide consumer information to Defendants, and information Defendants independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER.

21.     The information reported by Defendants Experian, Equifax, and Trans Union contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer credit reports.

22.     The vast majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

23.     These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

24.     FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

25.     Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

26.     The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

27.     In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many

COMPLAINT AND DEMAND
FOR JURY TRIAL

delinquent accounts exist. However, once a delinquent account has been remedied, the longer the account stays current the more a consumer's FICO Score should increase.

28.     Defendants Experian, Equifax, and Trans Union obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of his consumer credit report, as well as individual account tradelines.

29.     Defendants Experian, Equifax, and Trans Union had notice of Plaintiff's bankruptcy through their independent collection of consumer information as well as from information provided to Defendants by tradeline furnishers. Defendants reported Plaintiff's bankruptcy filing and/or discharge in the public record section of their credit reports, as well as individual account tradelines.

30.     Defendants Experian, Equifax, and Trans Union are well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

31.     Defendants Experian, Equifax, and Trans Union are also aware of the effect of a reaffirmation of debt, which excludes the debt from the bankruptcy discharge.

32.     Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Defendants obtain the bankruptcy case information, as well as from information provided to Defendants from furnishers of account/tradeline information.

33.     Rather than following reasonable procedures to assure maximum possible accuracy, Defendants report inaccurate information regarding consumers who file bankruptcy even if that information ignores or contradicts information already known by Defendants,

COMPLAINT AND DEMAND
FOR JURY TRIAL

information provided by furnishers of account/tradeline information, and/or information contained in public court records that Defendants have obtained through its independent efforts, or could easily obtain through reasonably available public records.

34.     Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, including pertaining to account and payment statuses, and reaffirmations through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a consumer bankruptcy.

35.     In or around March 2016, Plaintiff acquired a loan from GNCU (the "Account"), in order to purchase a motorcycle (the "Motorcycle").

36.     The Account was secured by the Motorcycle.

37.     Plaintiff filed for Chapter 7 Bankruptcy on or about November 22, 2019, in the United States Bankruptcy Court for the District of Nevada, case no. 19-51370-btb.

38.     On or about February 26, 2020, Plaintiff reaffirmed his obligations under the Account, whereby Plaintiff remained personally liable/responsible for continued payment on the Account. The Account was therefore not included in Plaintiff's bankruptcy discharge.

39.     There were no objections during Plaintiff's Chapter 7 Bankruptcy, or proceedings to declare any debt "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

40.     Accordingly, Plaintiff received an Order of Discharge, discharging his personal liability for all dischargeable debts on March 10, 2020.

41.     Upon information and belief, following Plaintiff's Chapter 7 Bankruptcy, Defendants Experian and Trans Union prepared one or more credit reports concerning Plaintiff. Defendants reported Plaintiff's Chapter 7 Bankruptcy case information, including the case/reference number, court, filing date, and discharge date.

COMPLAINT AND DEMAND
FOR JURY TRIAL

42.     Upon information and belief, following Plaintiff's Chapter 7 Bankruptcy, Defendant Equifax prepared one or more credit reports concerning Plaintiff. Defendant reported Plaintiff's Chapter 7 Bankruptcy case information, including the reference number, court and filing date. Defendant Equifax did not report the discharge date.

43.     Defendants Equifax, Experian, and Trans Union also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

44.     Plaintiff filed for bankruptcy and reaffirmed the Account to rebuild and improve his credit.

45.     After Plaintiff's bankruptcy was discharged, he paid off the Account in full.

46.     Sometime after Plaintiff's bankruptcy discharge, Plaintiff obtained his Experian, Equifax, and Trans Union consumer credit reports to ensure that his credit account tradelines and bankruptcy were being reported accurately.

47.     Plaintiff learned Experian, Equifax, and Trans Union were inaccurately reporting Plaintiff's reaffirmed Account as having been included in Plaintiff's bankruptcy, and subject to bankruptcy coding that conveys to creditors/lenders that the account was discharged or non-current/non-paid even though Plaintiff continued to make ongoing payments on the Account.

48.     Experian was inaccurately reporting the Account (account no. 88441XXXX) as "Discharged through Bankruptcy Chapter 7" and updated in November 2019.

49.     Equifax was inaccurately reporting the Account (account no. XXXXX7992) as "INCLUDED_IN_BANKRUPTCY" and with "Bankruptcy chapter 7" and "Bankruptcy discharged" in the "Comments" section.

COMPLAINT AND DEMAND
FOR JURY TRIAL

50.    Trans Union was inaccurately reporting the Account (account no. 88441****) as "Included in Bankruptcy" and with "CHAPTER 7 BANKRUPTCY" in the "Remarks" section.

51.    Before filing for bankruptcy, Plaintiff never missed a payment on the Account. Plaintiff continued to make timely payments on the Account after the discharge and paid off the Account in full.

52.    Plaintiff reaffirmed the Account during bankruptcy, remaining personally liable for the obligation, and the Account (debt) was indisputably not discharged. Plaintiff did this to maintain some of his credit history and to rebuild/re-establish credit.

53.    However, when Plaintiff pulled his credit reports, Plaintiff discovered that Defendants Experian, Equifax, and Trans Union were not reporting the Account's positive payment history despite reaffirmation of the debt.

54.    Defendants Equifax, Experian, and Trans Union's reporting were therefore patently false and materially misleading, as the Account was reaffirmed and not discharged by Plaintiff's bankruptcy and Plaintiff continued to make timely payments on the Account, and in fact paid off the Account in full. As reported, Defendants fail to report the correct payment history and ongoing payments, and/or report false payment statuses that indicate that the Account was included in and/or discharged in bankruptcy, instead of its true status of reaffirmed.

55.    Plaintiff's payment history on the Account is important to Plaintiff's efforts to reestablish his credit and maintain his previous positive credit history.

56.    On or about November 25, 2020, Plaintiff sent letters to Experian, Equifax, and Trans Union disputing their inaccurate reporting of the Account.

57.    The letters specifically advised that Plaintiff reaffirmed the Account in his bankruptcy and that he had paid off the Account in full.

COMPLAINT AND DEMAND
FOR JURY TRIAL

58. Plaintiff's dispute letter to Experian was delivered on November 30, 2020.

59. Plaintiff's dispute letter to Equifax was delivered on November 30, 2020.

60. Plaintiff's dispute letter to Trans Union was delivered on December 02, 2020.

61. On or about December 3, 2020, Trans Union responded to Plaintiff's dispute letter. Trans Union's response indicated that it had completed an investigation and updated the tradeline, but that it would continue to report the Account as "Account Included in Bankruptcy" with "CHAPTER 7 BANKRUPTCY" in the "Remarks" section.

62. Upon information and belief, Trans Union did not investigate Plaintiff's dispute and merely forwarded an automated dispute form to GNCU. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Trans Union through Plaintiff's reported payment history regarding on the Account, Trans Union merely parroted information furnished by GNCU despite awareness that the information was factually inaccurate and conflicted with information known by Trans Union.

63. On or about December 5, 2020, Equifax responded to Plaintiff's dispute letter. Equifax's response indicated that it had completed an investigation and updated the tradeline, but it would continue to report the Account as "Account Included in Bankruptcy" with "Bankruptcy Chapter 7" and "Bankruptcy Discharged" in the "Remarks" section.

64. Upon information and belief, Equifax did not investigate Plaintiff's dispute and merely forwarded an automated dispute form to GNCU. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Equifax through Plaintiff's reported payment history regarding on the Account, Equifax merely parroted information furnished by GNCU despite awareness that the information was factually inaccurate and conflicted with information known by Equifax.

COMPLAINT AND DEMAND
FOR JURY TRIAL

65.     Upon information and belief, Experian never responded to Plaintiff's dispute letter.

66.     On or about January 11, 2021, Plaintiff pulled his Experian credit report once again to check whether Experian had fixed the inaccurate reporting.

67.     The Experian report indicated that it had been "updated from [Experian's] processing of [Plaintiff's] dispute in Dec 2020," but Experian was still reporting the Account as "Discharged through Bankruptcy Chapter 7"

68.     Upon information and belief, Experian did not investigate Plaintiff's dispute and merely forwarded an automated dispute form to GNCU. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Experian through Plaintiff's reported payment history regarding on the Account, Experian merely parroted information furnished by GNCU despite awareness that the information was factually inaccurate and conflicted with information known by Experian.

69.     Upon information and belief, GNCU failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian, Equifax, and Trans Union, despite possessing all necessary and relevant information to investigate the dispute and to furnish/report accurate information to the CRAs. Consequently, GNCU continued to furnish inaccurate data to Experian, Equifax and Trans Union.

70.     As a result of Defendants' conduct, Plaintiff has sustained actual damages including but not limited to, harm to Plaintiff's credit score and reputation, embarrassment, anguish, and emotional and mental pain.

COMPLAINT AND DEMAND
FOR JURY TRIAL

71.     Upon information and belief, had Defendants accurately reported the Account with its accurate payment history, Plaintiff's credit score and credit worthiness would have been better.

72.     Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild his credit.

73.     Upon information and belief Plaintiff was denied credit opportunities due to Defendants' inaccurate reporting of the Account.

74.     Upon information and belief Plaintiff was approved credit opportunities at less favorable terms due to Defendants' inaccurate reporting of the Account.

## COUNT I
### Defendants Experian, Equifax, and Trans Union
### (Violations of the FCRA, 15 U.S.C. § 1681 *et seq*)

75.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

76.     The FCRA requires credit reporting agencies, like Experian, Equifax, and Trans Union, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

77.     Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and also by failing to report accurate information when placed on notice that the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants or reasonably available to Defendants.

78.     Defendants knew or should have known of their obligations under the FCRA, especially pertaining to reporting reaffirmed debts. These obligations are well established by the

COMPLAINT AND DEMAND
FOR JURY TRIAL

plain language of the FCRA, n, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of reaffirmed debts during and after bankruptcy.

79.    Upon information and belief, Defendants Experian, Equifax, and Trans Union regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports they sell to other parties.

80.    Upon information and belief, Defendants Experian, Equifax, and Trans Union voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge.

81.    The diligence Defendants exercise in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of bankruptcy proceedings and orders upon certain accounts, including, the status of accounts that are reaffirmed, despite Defendants' knowledge thereof and the reported payment history by tradeline furnishers.

82.    Consequently, Defendants routinely reports inaccurate, incomplete, outdated, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possesses information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

83.    Defendants therefore negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to Plaintiff.

COMPLAINT AND DEMAND
FOR JURY TRIAL

84.     Defendants' violations include but are not limited to, violations of 15 U.S.C. § 1681e(b) for failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

i.      Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

ii.     Failing to consider all relevant information while investigating Plaintiff's dispute.

iii.    Failing to include all relevant information when notifying Stearns of Plaintiff's dispute.

85.     Further, the FCRA provides that if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, or it must delete the item from the file within thirty (30) days of receiving the consumer's dispute notice. 15 U.S.C. § 1681i(a)(2)(A).

86.     The FCRA further requires the credit reporting agency, within 5 business days of receiving notice of the consumer's dispute, to provide notification of the dispute to the person who furnished the information in dispute and requires the credit reporting agency to "include all relevant information regarding the dispute that the agency received from the consumer."  15 U.S.C. §1681i(a)(2)(A).  In conducting its reinvestigation of disputed information in a consumer report, the credit-reporting agency is required to "review and consider all relevant information submitted by the consumer."

87.     Thus, in addition to violating the FCRA by failing to follow reasonable procedures, Defendants additionally violated the FCRA by failing to perform a reasonable

COMPLAINT AND DEMAND
FOR JURY TRIAL

reinvestigation of the disputed Account even after Plaintiffs notified Defendants of the inaccurate information each reported in Plaintiff's credit file.

88.     Defendants Experian, Equifax, and Trans Union's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

        i.     Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

        ii.    Failing to consider all relevant information while investigating Plaintiff's dispute.

        iii.   Failing to include all relevant information when notifying Stearns of Plaintiff's dispute.

89.     Defendants' acts, as described above, were done willfully and knowingly.

90.     As a result of the foregoing violations of the FCRA, Defendants are liable to Plaintiff for actual damages, statutory damages, attorneys' fees and costs.

91.     The inaccurate reporting of Plaintiff's information has caused Plaintiff to suffer from stress, anxiety, headaches, frustration, and emotional and mental pain and anguish, and a decreased credit score. Moreover, the inaccurate reporting of Plaintiff's Account has deprived Plaintiff of credit opportunities and resulted in less-favorable credit terms.

92.     Instead of reasonably reinvestigating Plaintiff's dispute, Defendant Experian "verified" the tradeline was accurate and continued to report the reaffirmed Account as "included in bankruptcy."

93.     Instead of reasonably reinvestigating Plaintiff's dispute, Defendant Equifax "verified" the tradeline was accurate and continued to report the reaffirmed Account as "included in bankruptcy."

COMPLAINT AND DEMAND
FOR JURY TRIAL

94.     Instead of reasonably reinvestigating Plaintiff's dispute, Defendant Trans Union "verified" the tradeline was accurate and continued to report the reaffirmed Account as "included in bankruptcy."

95.     Defendants' acts, as described above, were done willfully and knowingly.

96.     As a result of the foregoing violations of the FCRA, Defendants are liable to Plaintiff for actual damages, statutory damages, attorneys' fees and costs, as described herein and as allowable by law.

**COUNT II**
**Defendants GNCU**
**(Violations of the FCRA, 15 U.S.C. § 1681s-2(b))**

97.     Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

98.     The FCRA requires that furnishers of information like GNCU to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the credit reporting agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all credit reporting agencies to which the furnisher has provided the inaccurate information.

99.     GNCU knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. GNCU obtained or had available substantial written materials that apprised it of its duties under the FCRA. Despite knowing these legal obligations, GNCU acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

COMPLAINT AND DEMAND
FOR JURY TRIAL

100.    Plaintiff disputed the GNCU tradeline through all three national CRAs: Defendants Experian, Equifax, and Trans Union.

101.    Thereafter, the credit reporting agencies forwarded Plaintiff's dispute to GNCU, notifying GNCU that Plaintiff was disputing the information it had furnished about the Account.

102.    GNCU received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

103.    GNCU continues to furnish inaccurate information about Plaintiff to all three CRAs, even though GNCU possessed all relevant information about the Account and the inaccuracy that Plaintiff disputed.

104.    The inaccurate GNCU account materially and adversely affects Plaintiff's credit standing.

105.    On at least one occasion within the past two years, by example only and without limitations, Defendant GNCU violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Experian, Equifax, and Trans Union.

106.    GNCU violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

   a.   Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

   b.   Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

COMPLAINT AND DEMAND
FOR JURY TRIAL

c.  Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

d.  Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

e.  Willfully and negligently failing to properly participate, investigate, and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

f.  Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

g.  Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

107.   GNCU unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

108.   GNCU is a direct and proximate cause, as well as substantial factors in causing damage and harm to Plaintiff.

109.   Consequently, GNCU is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

COMPLAINT AND DEMAND
FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant for the following:

A.  Declaratory judgment that Defendants violated the FCRA;

B.  Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C.  Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F.  Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G.  Any other relief that this Court deems appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues so triable.

Date: February 26, 2021

*/s/Steven A. Alpert*
Steven A. Alpert, NV #8353
PRICE LAW GROUP, APC
5940 S Rainbow Blvd,
Las Vegas, NV 89118
T: (702) 794-2008
F: (866) 401-1457
alpert@pricelawgroup.com
Attorneys for Plaintiff

COMPLAINT AND DEMAND
FOR JURY TRIAL